And will you call the first case, please? 312-0023, Village of Bolingbrook, Appellee Jeff Elthorne v. Illinois-American Water Company, et al., Appellant Mark Radatore. Mr. Radatore. Good morning. Mark P. Radatore for the defendants and appellants. May it please the court. This appeal concerns a claim to enjoin the defendant water companies from petitioning the Illinois Commerce Commission to approve an agreement. The Citizen Participation Act was passed to safeguard the right to petition in the face of any claim to hinder, chill, or in this case squash the right to petition. If the act means anything, it requires dismissal of a claim to enjoin a petitioning right being pursued before a judicial tribunal like the Illinois Commerce Commission. Any other result would render the Citizen Participation Act a dead letter. Now, by way of background briefly, Defendant Illinois-American Water Company is a public utility that sells water at retail. Defendant American Lake Water Company is a common carrier by pipeline that sells water at wholesale to Illinois-American and others. Both these water company defendants are regulated by the Illinois Commerce Commission. The Illinois Commerce Commission is a quasi-judicial tribunal staffed with administrative law judges that hear matters relating to utilities. And the Illinois Public Utilities Act is a comprehensive body of statutory law that governs the regulation of utilities. For several years, the defendant water companies operated under two water delivery agreements, whereby American Lake Water would sell Lake Michigan water at wholesale to Illinois-American water, who would sell that water at retail to certain customers in certain service areas. Those agreements were called affiliated or intercompany agreements because the companies were related. The agreements were originally drafted in the 1990s, before these defendants came into being. And while they were still effective when the companies came into being, they were sorely out of date, in the sense that Citizens Utilities was identified as the utility and some of the service areas included Homer Township, which later became Homer Glen. So the water companies naturally wanted to consolidate the two agreements into one agreement and to update their terms. So on August 2, 2010, defendant Illinois-American Water petitioned the Illinois Commerce Commission to approve a consolidated water agreement with its affiliate defendant, American Lake Water. Illinois-American literally filed a document called a petition. The Public Utilities Act provides, and Bolingbroke doesn't contest, that affiliated agreements, such as the ones submitted to the ICC, are not effective unless and until approved by the ICC under a standard that considers the public's interest. So the petition matter before the ICC quickly turned into a contested proceeding, with the Illinois Attorney General intervening and the parties, the Illinois Attorney General and the defendants in this case, submitting testimony before an administrative law judge assigned to the case. Bolingbroke, however, didn't intervene or object to the petition matter. Bolingbroke instead, 90 days later on November 2, 2010, filed a lawsuit in the Will County Circuit Court. That lawsuit contained three counts. Count 3, labeled injunctive relief, sought to enjoin the ICC petition from proceeding. Count 2, entitled declaratory judgment, sought a court-issued declaration relating to the defendant's petitioning activity. And Count 1 was for breach of contract, seeking money damages for alleged contractual breaches. For purposes of this appeal, Count 1 is not at issue. This appeal concerns Counts 2 and 3, declaratory judgment, injunctive relief. As to Count 3, the injunctive relief count, Bolingbroke later filed an emergency motion for a temporary restraining order, just days before an ICC-scheduled hearing on the petition matter. Now that ICC hearing was continued, and the parties in the Will County Circuit Court case briefed the motion for a temporary restraining order. And in response to that motion, the defendant water companies filed a motion to dismiss under the Citizen Participation Act. So by June of 2011, the Will County Circuit Court had two motions in front of it. It had a motion for a TRO to shut down the ICC petition matter, and in response to that, it had a motion to dismiss under the Citizen Participation Act. Now, for reasons I'll get to in a moment, the court denied the TRO motion. It also denied the motion to dismiss under the Citizen Participation Act. But I want to mention a few words about the act. The act was passed by the legislature to safeguard the rights of individuals and, very clearly, corporations to petition the government or to participate in the government without interference from claims in a court whose purpose was to hinder the petitioning activity. Now the act effectuates that purpose with a two-pronged showing that's required by a defendant. Prong one requires that the defendant show that its conduct was in furtherance of the right to petition, speak, associate, or otherwise participate in government to induce favorable government action. That's prong one. Prong two requires a showing that the plaintiff's conduct, I'm sorry, or in response to defendant's conduct. That's prong two. As it relates to the first prong, it's essentially uncontested that the defendants were exercising petitioning activity or participating in government to seek favorable government action by filing a petition with a state agency, a quasi-judicial tribunal, the ICC, to seek favorable action, that is to approve their agreement and their petition. I think the briefs on our side do a nice job of laying out this issue and explaining it. And unless this panel has questions about this prong, I'm going to move to the second prong, which is where the heart of the dispute lies, and that is whether plaintiff's claims are based on, in response to, or relate to the conduct of defendant. In January 2012, the Illinois Supreme Court decided the case Sanholm-Cukor. Sanholm added the word solely to this second prong, so that it now reads solely based on. So really the main dispute today is whether it boils down to prong two and whether counts two and three of the complaint are solely based on defendant's petitioning activity. Now the Sanholm court explains in paragraph 57 of the official report that solely based on means whether the plaintiff is interfering with the petitioning activity or whether plaintiff is actually seeking a recovery for harm. That's paragraph 57. That's the explanation of solely based on. In our case, the true goal of count three was to squash defendant's petitioning activity. The true goal of count two was to hinder the petitioning conduct by seeking a court-issued declaration that defendant's ICC petition violated plaintiff's rights. That much is obvious from the complaint. The face of the complaint, the allegations of the complaint, and the request for relief sought in the complaint. And you're saying that because you filed a petition for TRO that that brings you within the parameters of the act? I'm saying, Justice McDade, that we filed a petition with the ICC to approve an agreement. We petitioned the ICC to approve a consolidated water delivery agreement. That's petitioning activity that's covered by the act. We are petitioning a state agency, and we are seeking favorable action. That is, approval of the agreement. So where does that stop? I mean, where does... If somebody comes and petitions the circuit court for something, is that petitioning activity under this act? It could very well be. Certainly, a court would be a state tribunal, and to the extent it would be considered a petition, where you're seeking favorable government action, yes, that would fall under the act. But then the issue becomes whether the plaintiff's claim is interfering with that activity. And on that issue, Justice McDade, the complaint's clear. The plaintiffs were seeking to enjoin the petitioning activity. That's count three. And they were seeking to hinder that petitioning activity in count two. The complaint is clear enough space. Is there other undisputed facts that demonstrate interference? Consider timing. The petition was filed on August 2nd, lawsuit filed November 2nd. Within 90 days of the petition matter being before the ICC, the plaintiff files a lawsuit seeking or containing an adjunctive relief count. And then consider also the timing that within two days of an ICC hearing on the petition, Bolingbroke files an emergency motion for a temporary restraining order. Okay, but let's get to what this suit's really about, both the petition and the suit. The only American has a contract with Bolingbroke, correct? Yes. And the effect of this petition would have what effect on that contract? No effect at all, Judge. I mean, isn't that what this is all about? No, it's not, Judge. What it's all about is Bolingbroke's effort to stop an ICC petition. Judge, the court, when it denied the temporary— Well, I mean, what interest does Bolingbroke have in stopping ICC petitions unless they affect their water rates or something, you know what I'm saying? I mean, there's something driving this. Well, yeah, I think what's driving it is that Bolingbroke was upset about the ICC petition but chose not to intervene. Instead, they filed a complaint to enjoin it. When that injunction motion was before the trial court, Judge— Excuse me for a second. What made them upset about the petition? Well, the allegation was that we should have gone to the mayor and the village council before we had gone to the ICC. But if that was their true goal, to protect that right, why didn't they file a claim for specific performance? Why didn't they seek an injunction that required the defendants to go to the mayor or the village council to get consent? That's not what they did. They filed a motion for a TRO to shut down the petitioning activity. If your petition is granted in the ICC, then can you go and can you change your civil— The ICC said we can charge this, ergo we're not bound by that contract with Bolingbroke. We demonstrated to the trial court that their contract, the asset exchange agreement, is not implicated in the consolidated agreement. And that's one of the reasons why this trial court denied their motion for a TRO. The trial court determined that Bolingbroke did not demonstrate irreparable injury or irreparable harm. And so when you consider the Sandhome Standard and what solely based on means, are they interfering and are they trying to recover for harm? They made no demonstration that they were trying to recover harm. If, will that be count one, right? No, count three is injunctive. I understand that, but the TRO was denied, right? Their TRO was denied. Okay, so are you all proceeding in the ICC? The ICC has approved the petition. We sought favorable government action, we petitioned for favorable government action, and they approved the petition. Okay, so you're all done in the ICC, right? Yeah, we have a final word from the commission. Okay. But that doesn't move the issue. It doesn't move this appeal because Wright v. Walsh, the Supreme Court case decided in 2010, indicates that we're entitled to attorney's fees to the extent we show that plaintiff's claim was solely based on our petition's conduct. In Wright v. Walsh's development, Wright, at the trial court level, had their complaint dismissed under 615, then brought an appeal to the appellate court saying, wait a minute, we're still entitled to attorney's fees under the Citizens Participation Act. The appellate court said, no, your claim's moved. Your 615 motion was granted by the trial court. You have no right to recover under the act. The Supreme Court says, no, that's not true. The act provides for attorney's fees. To the extent the act applies and the claim should have been dismissed, you're still entitled to attorney's fees. So the fact that the ICC has approved our petition does not move the issue before this court. Thank you. Okay, so now we're getting somewhere. And that is what we're talking about here at the end of the day with counts one and two is a right to attorney's fees. Right, and that's what the CPA, in part, is about. It's about punishing one party for trying to interfere with petitioning rights. That's one of the clear purposes behind the Citizens Participation Act and the public policy section, that the legislature passed this act to impugn or punish parties that interfere with petitioning rights. I mean, we had to incur the expense, Justice Smith, of responding to the motion for the TRO, to responding to the injunctive relief payment, for putting off the ICC hearing or continuing it so we could deal with and respond to plaintiff's motion for a temporary restraining order. We suffered real harm. So I would just conclude by saying that if the act doesn't apply to this case, and specifically counts two and three, that are seeking to enjoin petitioning activity, where their clear aim was to stop that petitioning activity before a judicial tribunal like the ICC, what claims can it possibly apply to? So the defendants and appellants request that the court reverse, that this court reverse the trial court's order denying its motion to dismiss and dismiss counts two and three under the Citizens Participation Act. Thank you. Mr. Alperin. Good morning. May it please the court, my name is Jeff Alperin. I'm here on behalf of the Plaintiff Appellee of the Village of Bolingbrook. As I see it, there's three determinative issues that really jumped off the page on me in this appeal. Number one, is the Bolingbrook complaint the type of meritless and retaliatory claim to which the act should apply? Number two, which is a related question, as Sandholm put out, has the plaintiff, excuse me, in this case the defendant, satisfied their initial burden to show that the Bolingbrook complaint was filed solely based on the defendant's protected First Amendment rights to participate in government. And number three, and I think you can tell by the way I phrased issue number two, is whether the defendant's acts here in petitioning the ICC fall within the protected constitutional First Amendment conduct protected by the act. So let me first turn my attention to the first issue, which is, is this the type of meritless retaliatory claim? And to do that, you have to look at what is a SLAPP claim. Well, the statute's not perfect, but there are several definitions that are given. First off, in section five of the act, it describes SLAPP actions as civil actions for money damages. Here, we've got count one, which is for breach of contract. They're not contesting count one in this appeal. Count one, they brought a motion to dismiss it. The trial court denied that motion to dismiss. They then brought a second motion to dismiss it as part of the SLAPP act. That was denied as well. They dropped their appeal of count one here in this appeal. So what we're dealing with then is counts two and counts three. Neither one of those two are causes of action for money damages. Count two is for declaratory relief. Count three seeks an injunction. All right. Second off, the CPA is also, Citizens Participation Act, also says in section five, these are the type of abusive process cases. That's what they're equivalent to, where a government or some powerful individual is trying to squelch somebody's right. A typical case is where, you know, a neighbor's concerned about a development going up behind them. You know, they participate in government trying to get that development shot down, and the government says, hey, look, if you don't stop this, or the developer says, if you don't stop this, we're going to hit you with a false nuisance claim, or we're going to tie you up in court, so drop your opposition. That's the standard type of abusive process claim that is considered a SLAPP act. That's not what we're dealing with here. Sandholm also says that only meritless and retaliatory SLAPP suits are subject to dismissal. They have to be meritless and retaliatory. What we have here is essentially a breach of contract case. If there wasn't a contract, there would be no count one, breach of contract. There would be no count two. There would be no count three. Count two, by the way, I think counsel misstated what we're seeking in count two, because count two sought a declaratory judgment that the provisions of our contract cannot be changed without the written consent of us. That's right in the contract. I mean, the contract essentially says you can't charge new additional customers a lower price than you can us. You've got to match that, if you will. And number two, you have to make sure that if you're going to change this, you can't do it unilaterally. You've got to get our consent. They didn't do that. And by filing this ICC petition, it was a little unclear in our ICC petition what they were seeking. Matter of fact, I'm happy to hear today that counsel admitted that the ICC petition had no effect at all on our contract. That's good news to me, because in the petition, they defined delivery agreement as one thing, but then on page 380 of the record, they cite to, you know, the delivery service areas that are incorporated in our delivery agreement, the Bolingbrook Lake Michigan water contract. So I'm very happy to hear that he's of the position that the ICC petition has no effect on us. All right. So count three seeks to prohibit them. Did the trial judge make that finding that what they were doing has no impact on your contract? I do not recall that finding being made. That's why I'm happy to hear that that admission was conceded here today. I think that's an important point. How does the act of petitioning breach the contract? Well, our concern was the contract says you can't change the terms of our contract without getting our written consent. Their petition says before the ICC, hey, look, we've got this interrelated company agreement. You know, they've got American Lake Water and Illinois American Water. So we need to get ICC consent to approve it. And they called it, you know, we want to change all the delivery agreements to be one consolidated uniform agreement. And, of course, that agreement didn't have our price matching guarantee. So it was our concern that our delivery agreement would fall within the terms of their ICC petition. And they didn't come to us to get consent to change ours. They just sought to change all their delivery agreements before the ICC. Now, pursuant to our contract, you know, we have the right to bring that action in circuit court, either in chancery or in law. Well, the contract says chancery. It wouldn't say chancery if it wasn't contemplated by the parties that we could bring this action in Weld County Court, which is exactly what we did. Now, they tried to dismiss all three counts. Correct. Did they not? Correct. It was only at the appeal time that they dropped one of them. They tried twice to dismiss all three counts. And the first time was based on jurisdiction. They said we should have been before the ICC. And the court shot that down. And they then filed a subsequent motion. So it's a little, you know, they probably should have filed that initially, but they didn't. They then brought the SLAPP Act motion to dismiss, which he also denied. So with respect to, if I can move on. So let me argue and say this is not the type of claim that jumps off the page of you as being a SLAPP Act. It's not an abusive process situation. It's us trying to enforce our contractual rights. Count one relates to the past breaches. Counts two and three relate to the ongoing and future breaches.  And it's always helpful when a supportive case comes out from the Supreme Court while you're up on appeal. Sanholm says first you look at whether this is the type of case that, you know, that jumps out if she has a SLAPP Act case. But second, the plaintiffs, or excuse me, the defendants have the initial burden of proving that the lawsuit, Bolingbroke's lawsuit, was solely based on, related to, or in response to their acts. I'd argue the fact that we have count one for breach of contract clearly shows that it's not solely based on or related to their acts. We're trying to recover our monetary damages for their violation of our contract. Count two and count three relate solely to count one. I mean, we incorporate all the allegations of count one, or at least most of them, in counts two and three. Sotomayor also provides that where a plaintiff files a suit genuinely seeking relief, as they were doing in Sanholm, for damages for defendants' wrongful acts, the lawsuit is not solely based on defendants' rights of petition. Now, you only go to the next step under Sanholm of the clear and convincing evidence if the defendants have met their initial burden. They haven't shown that here. We meet the clear and convincing burden anyways in light of the contract, which clearly lays out that we have a valid cause of action here. This is not something we're doing trying to squelch somebody's rights. This is something we're validly bringing on behalf of our contractual rights and to defend them. I mean, surely the act was not designed to inhibit, prevent, or provide an absolute defense to a governmental entity seeking to enforce its contractual rights. If that was the case, I mean, if the defendants are successful here, governmental entities are not going to want to enter into contracts with utility companies. It's going to squelch that desire. Why? Because they're going to be less enforceable. Well, I guess that's important. What about the ICC action would make your contract unenforceable? It was our concern that if the ICC then says, this contract does not contain the provision that you have to match the price, it was our concern that they would then argue, see, Judge, we now have an ICC petition saying we don't have to match the price. Now, obviously I have defenses to that, but that was a concern. That was a legitimate concern. Not only that, but they have to, under our contract, they have to get our approval to change the contract. Now, I'm happy to hear, again, that they're saying, well, that ICC petition had nothing to do with your contract. Great. Wonderful. That wasn't clear from the ICC petition itself under the last exhibit they attached to the petition. And notably, there's no Illinois case, not one. There's an overlap in the ICC petition's request and some contractual rights you have. I'm sorry? There's an overlap between some of the things they're requesting with the ICC and your contractual. We were concerned about that, yes. We were concerned that what they were seeking to do before the ICC involved our contract. Now we've heard from opposing counsel that what they were seeking to do before the ICC did not involve our contract. Well, you know, they could have told us that a year ago, two years ago, whenever we filed this thing. They didn't do that, which is why these counts were still viable at the time we filed them. You know, we were concerned about our contractual rights being abrogated without our consent. You can't unilaterally change the terms of our contract without us being involved, and that's what we were concerned about. Now, notably, there's no Illinois case, not one, that applies this statute, the slapback statute, to breach of contract claims. Defendants do not cite the one case nationwide. You know, these slapbacks have been, or anti-slapbacks, have been adopted nationwide in many, many states. They do not cite one nationwide that applies this to breach of contract cases. On the contrary, in California, the cases that we cite, there were cases that we cite in our brief, the slap statute did not bar allegations of arguably protected activity that were incidental to the principal thrust or gravity of the complaint involving a breach of contract. That's what we have here. Now, Sandholm makes the interesting finding that the act is not intended to protect those who commit wrongful conduct and then seek refuge in the immunity conferred by the statute. That's exactly what the defendants are doing here. Now, they're claiming Sandholm doesn't apply because Sandholm dealt with a defamation issue and not a breach of contract issue. But, you know, if the Supreme Court wanted to limit Sandholm, they very well could have. They didn't. So, therefore, and if you look, actually there was a recent case that just came out from the 2nd District on September 6th, and the name of the case is August B. Hanlon, 2012, ILLAP 2nd, 111252. That case, it was a slapback case involving slander, and the court found, you know, the argument was raised that, well, hey, Sandholm doesn't apply because it came out after our case was already decided. And August said, no, no, no. As a general rule, decision of our Supreme Court applies retroactively to causes up on appeal. It cited the Miller v. Gupta Supreme Court case for that. And, again, it also found, by the way, it affirmed the denial of the motion to dismiss. So, well, was Sandholm the construction of the law or creating a new rule? Sandholm, I think what Sandholm was doing was providing a little bit more guidelines and applying what had already happened. You know, applying what was initially being done by the courts. Because under Wright Development Corporation, the Supreme Court case that came from before, it came out and said, you know, these only apply to meritless cases. So what the trial courts were doing, which our trial court did, was it looked to see, is this a meritless retaliatory claim? And then it found that it was. So what Sandholm was really doing was just laying down instructions and a little bit more solid procedure as to how to go about that. Because the act is a little unclear. It's not perfect. But Sandholm came out and verified what the judge had done in our case as well as what's been going on across the state. So if they're just construing a statute, retroactivity is not really an issue, is it? I agree. I agree. I think it should be applied retroactively. Let me turn to the third point because counsel made a misstatement in his argument. He came out and he said, and he skipped right on past it, which I thought was interesting. He said it was essentially uncontested that their acts here are falling within their protected constitutional rights. That's not uncontested at all. Matter of fact, I'd argue that they're clearly not. Not every petition, including the petition before the ICC, to approve an interrelated company contract is protected by the act. I mean, the reason why they filed their petition before the ICC is because the statute, the Public Utilities Act here in Illinois required them to do so, a statute. Now, the cases, including Sandholm, talks about the CPA only covers acts in furtherance of their constitutional right to petition for the redress of grievances. If you're filing something pursuant to a statute, you don't have a constitutional right there. There's a difference. Section five of the act focuses on constitutional rights of persons to petition the government for grievances. The Gassman case from the first district involving religious discrimination, the act protects from liability all constitutional forms of expression and participation in pursuit of favorable government action. Let me ask you, though, does it seem a little counterintuitive that you can be sued for doing something that a statute requires you to do? Well, I would say no. Because, I mean, if they were clear in what they were doing before the ICC with us, we wouldn't have had count two and count three. It wouldn't have been there. If they were clear in their ICC petition that it was not involving the Bolingbrook Lake, Michigan water contract, this counts two and counts three wouldn't be here. We would only have to count one. Probably count one either? Well, but the count one relates to the eight years of time when they did have a separate agreement with Plainfield that gave Plainfield a better rate than us. So count one would still be there. Okay. I know I'm running short on time, so let me – I'll rest on my brief for the rest of my arguments. But let me just conclude by saying, as stated in Sanholm, dismissal of a lawsuit pursuant to the Act is a drastic and extraordinary remedy. In light of the severe penalties imposed on the plaintiff under the Act – and you heard, the Act clearly says you get attorney's fees if you're successful in the motion – the Supreme Court in Sanholm refused to read into the statute an intent to create a new qualified privilege absent an explicit statement of such intent in the Act. I'd ask you to make the same finding with respect to the breach of contract context. If there are any additional questions, I'd be happy to answer them. Otherwise, I'll rest on my brief for the remaining arguments. Okay. Thank you very much. All right. Thank you, Mr. Alperin. Mr. Rotatori. Mr. Murbuttle. I agree with you, Justice Smith. It is counterintuitive that you'd be subject to a lawsuit for pursuing a petition before a judicial tribunal. That's completely counterintuitive. But it demonstrates that their true goal was to interfere with our petition rights. And this panel has to look no further than the complaint itself. They argue the gravamen of their action was to protect contractual rights. Read the complaint. Count 3 entitled Injunctive Relief. Prayer for Relief. Quote, a preliminary and permanent injunction adjoining defendants from proceeding with the ICC petition. In document number 10-0481. Declaratory judgment count. Quote, there's an actual controversy here between Bolingbrook and defendants as to whether defendants' ICC petition and proposed water delivery agreement violate certain of Bolingbrook's rights. The complaint is clear that what they were seeking to do was to shut down petitioning activity. Well, let me ask you this. I hate to talk about practicality in a courtroom, but if your petition had no bearing on their contract, did it ever occur to anybody to write them a letter and say, hey, folks, this has no bearing on your contract? I guess I did. I did that after we received the emergency TRO, record site C704, May 24, 2011, letter from counsel to opposing counsel saying, look, you have no claim here. We're not effectuating change to your agreement. There's no motion for a TRO to pursue. Please drop it. They never responded to that letter. They just proceeded with their TRO. And they had options to protect their rights, obviously, other than trying to enjoin the petitioning activity, right? They could have intervened in the ICC petition if they truly felt that their contractual rights were being violated. They could have waited until after the ICC ruled. However, the ICC ruled if they chose not to intervene and sought an injunction or brought a breach of contract claim then, after the agreement would have become effective. Or, as I mentioned earlier, they could have sought specific performance in the original complaint. But that's not what they did. What they did was they wanted to enjoin petitioning activity. If they truly wanted to protect contractual rights, then file a count for specific performance. The other point I want to respond to is Justice Carter's question about the overlap. And Sandholm, I think, is clear on this point. That to assess that issue, you have to consider whether plaintiff's claim has a substantial basis other than the petitioning activities implicated. That's paragraph 47 of Sandholm. So, in other words, can plaintiff's claim exist without the petitioning activity? Here, no. Plaintiff's injunctive relief count is based on the petitioning activity. If you take out the petitioning activity, if you remove the ICC petition from count three, there's no injunctive relief claim. The petitioning activity was integral, not incidental, to that count. Contrast that with the facts in Sandholm, where the defendant in that case waged a very public and contentious campaign against the plaintiff, going to the World Wide Web, the web, radio stations, speaking at radio stations, supplying information to a print editor, and then also going to a school board. Doesn't it have import that we're dealing with three counts? I think it does because... There were three counts. Wall Street had three counts. In this case. Yeah. And there's a breach of contract counts. They clearly know how to plead a claim for breach of contract. That's not what's at issue in this appeal. What's at issue in this appeal is counts two and three. Counts two and three, seeking to enjoin the defense from petitioning. That's a question I have under the Supreme Court's view of the statute. Don't we still have to consider there were three counts? No. The act is very clear, Justice Carr, that it's not the lawsuit that potentially comes under the act. There's a definition of the word judicial claim, or claim includes any lawsuit, cause of action, or claim. And I would point this panel to Shoreline Towers v. Gassman. That's a case where the 1st District in 2010 found that two injunctive relief counts were clearly predicated on petitioning activity. And in that case, the trial court didn't dismiss the entire lawsuit. It dismissed specific counts. The very type of count that they pled in this case. And that also rebuts plaintiff's claim that there's no case in Illinois that dealt with a count like this one. He referred to it as a breach of contract count. That's not what's at issue in this appeal. It's an injunctive relief count. But it's at the end of the question, I guess. Hypothetically, water companies or utilities may have a long-term contract with a village or a city or a municipality. And let's suppose they decide for whatever, because of economic events, this contract's no longer economically feasible for them. So they want to go to the ICC and petition for relief from basically to get out of that contract. In that case, certainly petitioning activity, we're going to petition the ICC. Under the contract, would it be offensive for the municipality or government entity to seek an injunction to stop that from happening? Because they're seeking to violate a contract. Is that offensive just because what you're doing is petitioning? Well, let me first say that's not what happened here. But there are ways to enforce the right you just suggested in ways that you don't stop or squash petitioning activity. Are we talking about form over substance? No, I don't think we are at all. I think that you could intervene in the ICC petition. You could seek a claim, and I keep mentioning specific performance, where you're not actually enjoining the petitioning activity, but you're asserting this contractual right, this hypothetical one you mentioned. I mean, at the end of the day, also, after the ICC approves whatever the ICC approves, there are options left available, breach of contract or whatever they are. Maybe it's an injunction to require the company to do whatever it is they claim should have been done. But that's not – those suggestions that I'm giving you are not efforts to stop petitioning activity. That's what the Act is concerned about. You know your argument with regard to specific performance. Their concern was in the future you would be trying to stop their contract. That's what they say, correct? They didn't say that right now you're not complying with the contract, did they? Except for the Plainfield matter. Yeah, and, well, they have to say that, Justice Carter, because the agreement wouldn't become effective until the ICC approved it. So when we submitted the petition and the agreement to the ICC, it's not a good agreement. So how could you file a specific performance case? Well, yeah, I mean, I'm just suggesting there are other alternatives. Just as Schmidt raised a concern, how do you protect a right, I think is sort of your point. What I'm saying is there's a whole panoply of options available that don't enjoin petitioning activity, that don't violate the Citizen Participation Act. And I guess that's where I'm just wanting to understand your position, and that is, are you saying that any time you seek to enjoin petitioning activity, that's offensive to the Act? Well, you know, any time. I would say certainly in this case it's clear that their claim to enjoin our petitioning activity is offensive. I mean, hypothetically, maybe there's a circumstance where it wouldn't be offensive to the Act. But, you know, if this Act means anything, it requires dismissal of Counts 2 and 3 of their complaint. Okay. Thank you very much. Thank you, Mr. Rattatore. Thank you both for your arguments here this morning. This matter will be taken under advisement. Written disposition will be issued. And right now the Court will be in a brief recess for a panel change before the next case.